Ruffin, C. J.
 

 William S. Morris, of Newbern, made his will on the 15th of March 1831, and therein appointed the defendant Lane the executor, and gave to his executor all his estates, except a negro woman, named Patsy, and her three children Faucitt, Albert, and Freeman, in trust, for the following purposes; First, to sell the same and collect the proceeds and other moneys, due to the testator. “ And secondly, that as soon after my decease as practicable, and at all events within a year thereafter, my executor remove beyond the limits of this State, and with the intent of a permanent residence to some State or country, where emancipation is unrestricted by law, the said Patsy, Harriett, Albert and Freeman, and there cause them to be entirely emancipated. Thirdly, that my executor shall apply one half of my money, debts due me, and the proceeds of the sales before directed, as a fund wherewith to effect the removal, and emancipation as aforesaid of the said Patsy; Harriett, Albert, and Freeman, and to provide for them af_ ter emancipation in such form, and manner as my executor
 
 *75
 
 shall judge best, as the means of their education, improvement, and comfortable subsistence And fourthly,, that the other half be applied in certain other legacies.
 

 By a codicil, dated May 30th, 1838, the testator express' ly republished his will, which, he says therein, was written by Judge Gaston, and appointed Hardy VYhitford, and John L. Durand executors; and he “devised to them or the survivor of them my piece of ground with the improvements on the west side of Craven street, between &c, and also my household, and kitchen furniture, my cow, and calf and ten shares of the capital stock of the Merchants Bank of Newbern; to hold said real estate in fee simple, and said personal property absolutely, in trust, nevertheless to permit my woman Patsy, to use, occupy, and enjoy the said piece of ground and the improvements, and said furniture, and cow, and calf, and to have the dividends of said Bank •stock, during the natural life of said Patsy, and after her decease in trust, to surrender up said real or personal estate to Harriett, Albert, and Freeman, the children of said Patsy, to be held by them in absolute property.
 
 Item:
 
 I desire my executors or the survivor s of them to sell the lots, No. 83, and 67, in the town of Newbern at public auction; and of the proceeds of the sale I give unto William Henry Morris, son of said Harriett, and grandson of my woman Patsy, one thousand dollars” — giving the residue of such proceeds to certain other persons.
 

 The testator died in 1848, and Lane and Durand, the only surviving executors, proved the will. The bill was filed against them in 1850, by the legatees named in the will, other than the negroes, and by the heirs, and next of kin of the testator, for an account, and payment of the leg- ' acies, and the distribution of the surplus undisposed of, and praying, that the dispositions for the emancipation of the slaves, and lor provisions for them, may be declared unlaw
 
 *76
 
 ful, and void, and that a trust in regard to the real estate may be held to result to the heirs, and of the personal estate to the next of kin.
 

 . The answer of the executors and trustees states, that the boy Albert died before the testator, and, “ that in the year 1828 the testator carried the slaves Harriett and Freeman to the Slate of Pennsylvania, and there caused proceedings to be had for their emancipation, and did, according to the laws of Pennsylvania, in such cases, provided, emancipate ail'd set free, as he was there advised, the said slaves, and then returned with them to his former residence in this State; and that from thence until his death the
 
 said
 
 Freeman and Harriett were in his possession and use: And that, being advised after his return that the said proceedings were irregular and contrary to the policy of the laws of this State, and that said emancipation was void here, and would prob-a bit" be so declared at his death, the testator, under the advice of Judge Gaston, executed his will in 1831, and subsequently thereto, the boy, William Henry, was born,
 
 who
 
 is mentioned in the codicil as the child of said Harriett.” The answer submits whether under those facts Freeman and Harriett were not duly emancipated, and whether, therefore, William Henry was not free by birth.
 

 The answer further states, “that within the year after the testator’s death, and before the filing of the bill, the defendants removed the negroes, Patsy, Harriett and Freeman, to the State- of Pennsylvania, with the intent of a permanent residence in that State,- the same being
 
 a
 
 State in which emancipation is unrestricted, and there caused them, the said Patsy, Harriett and Freeman, to be entirely emancipated. And in that, they say, they-did as they were advised, and as they believed, in the faithful -discharge of the trust reposed in them by their testator, it was their duly to do; and that if any other thing remains or is nec
 
 *77
 
 essary to perfect the execution of said trust, they are willing and ready under the order and direction of the. Court to perform the same.” The answer, then, states the application of part of the funds of the estate to the removal and subsistence oí the three negroes, Patsy, Harriett and Freeman, and the payment of two years rent of the house and lot to Patsy.
 

 The Court thinks the testator was well advised by Judge Gaston, then at the bar, that his proceedings in Pennsylvania, in 1828, would be deemed void here, as having been in fraud of the law of this State. The proceedings, whatsoever they were, are not set forth in the answer, nor is any proof of them before the Court, showing that at that time they were effectual even under the law of Pennsylvania. But admitting them to have been so, the Court is, nevertheless, of opinion, that the Courts of this State cannot give effect to them. It was an act by a citizen of North Carolina, domiciled here, whereby he took slaves from this State ■and carried them into another State, Where Slavery did not exist, in order that by the mere fact of being there, though only
 
 in transitu,
 
 they should become free, and then bringing them immediately to his domicil here',' and holding them here as slaves up to his death, twenty years, and disposing of them in his will as slaves. Of such an act the Court can only say, that it is apparent that the pretended emancipation in Pennsj 1 vania was really to have its effect in North Carolina, where the emancipation could not lawfully be made, and therefore that it was manifestly a fraud on our law, and the Court cannot, upon any principle of comity, give effect to it. It presents a stronger case for the application of the principle, that the Courts of one country will not give effect to the acts of persons, and especially of its own citizens done in another country, with the intent to violate or defeat the law of the former, than
 
 *78
 
 ■that of an unlawful marriage. Iret in
 
 Williams
 
 v
 
 Oaks,
 
 5 Ire. 535, the Court was obliged to hold, that when our law denied to a person, for crime, the capacity to marry, that law could not be evaded by such pei«sons going mto another State for the mere purpose-of getting married there, and immediately returning to this State. Rut upon the very •question of emancipation of a slave by an act like that un•der consideration, there is a direct adjudication by a highly respectable tribunal, that of the high Court of Errors •and Appeals -in Mississippi, in the case of
 
 Hinds
 
 v
 
 Brazealle,
 
 2 Howard, 837. In that case a person took slaves to Ohio,, with the intention to emancipate them there, and. «carry them back immediately to Mississippi, and in his -will ••he ratified his deed ©f emancipation, and gave real and .personal estate -to the negroes, Upon a bill by the heirs «and next of kin against the executors it was held, that the «alleged emancipation in Ohio was in fraud of the law of Mississippi, and therefore it was held to be void there, and the negroes were declared to be slaves and the executors •decreed to account for them and for the legacies to them. The opinion of the Court w^s delivered by Chief Justice •ShaRkev, and the decree is sustained upon reasoning entirely satisfactory to our minds, indeed on such grounds «as are indispensable to protect the State from being overwhelmed with an African population, in a state of
 
 quasi
 
 •servitude and freedom, not giving any of the guaranties for the security of the public peace, which the government prescribes for such persons, when belonging to either the one caste or the other. Therefore, Harriett’s son, William fienry, is a slave still, and the .gift to him fails.
 

 The other slaves are in the same condition, unless they be entitled to their manumission under the will and codicil; apd fhe Court is of opinion that they are not. If the case stood pn the will of 1831, it would be otherwise, as has
 
 *79
 
 been held in the case of
 
 Thompson
 
 v
 
 Newlin,
 
 decided at this term. But it does not; for it is the office of a codicil, not only to republish the will, to which it is a codicil, but also to- revoke it as far as it is inconsistent with it. In that respect there is a distinction between the effect of inconsistent provisions in the body of the will itself, in which case both have operation from one and the same act of publication, and such provisions in the original will and in a codicil, in which case those in the first are necessarily modified or revoked by the latter. That being so, it is apparent in this case, that the testator must have changed his mind as to the residence of the negroes, and that, when he made the codioil, he intended that they should be free and remain here. It must be so inferred, because in the codicil he devises the lot and improvements in Newbern to trustees in trust to
 
 permit
 
 Patsy, during her life, to use, occupy, and enjoy them, and after her death for her children. That provision renders it plain, that the testator either intended, or at least was providing for the residence of those persons in this State; and it has been over and over again decided, that the Court cannot, upon a provision with a view to their remaining here, decree the emancipation elsewhere, on the doctrine of
 
 Cypres,
 
 but that the whole provision is void, • and the slaves remain slaves;
 
 Haywood
 
 v
 
 Craven, 2
 
 N. C. Law Rep. 557,
 
 Pendleton
 
 v
 
 Blount,
 
 1 Dev. and Bat. Eq. 491,
 
 Lemmond
 
 v
 
 Peoples,
 
 6 Ire. Eq. 137. it must be declared, therefore, that the ne-groes Patsy, Harriett and Freeman, were the slaves of the testator at his death, and that they are to be accounted for by the defendants, as still being slaves, and also that the trusts created for their benefit in the will and codicil, are not valid in Law, but resulted,-
 

 Per Curiam. Decree accordingly.